This is an action to recover damages accruing upon a contract for the sale of hay, bought by the plaintiffs from Childerhose Pratt, in which the proceeds of two drafts, drawn by Childerhose Pratt on the plaintiff *Page 70 
and paid by it, were attached in the hands of the Peoples Bank of New Bern.
The Bank of Ottawa intervened, alleging that it was the owner of the proceeds of the drafts, and the only issue in controversy is as to ownership, raised by the interplea.
 The drafts were introduced in evidence, and on each was the word "collection."
(35) T. A. Uzzell testified for the plaintiff: "I am cashier of the Peoples Bank, and was cashier in 1912. In 1912 we received drafts from the Girard National Bank of Philadelphia on the Elm City Lumber Company. We have record of a draft for $211.03 and one for $161.30; they were sent to us for collection. [The drafts introduced in evidence identified by witness.] The regular indorsement stamp of the Girard National Bank appears on both drafts; the green stamp has the word `collection' on it. We did not give the Girard National Bank any credit on our books for these amounts before they were paid. In receiving drafts of this kind, sometimes we would remit proceeds less collection charges, and sometimes credit the bank's account and give them notice of the credit on the collection."
Cross-examination: "The drafts were made payable to the Bank of Ottawa, and were sent to us through our correspondent, the Girard National Bank. The former is a Canadian bank and the latter an American bank. I don't know whether or not the bank of Ottawa bought the drafts. They indicate on the face they were sent here for collection. We receive drafts in different ways. Sometimes as cash items and collection items; it depends how the draft is send to us; it could be sent to the Girard either as cash or collection, and be sent to us in the same way."
Redirect: "The form of this draft is the usual form furnished to customers of banks. This is the form furnished by us to our customers and that we have on our counters. When drafts come to the bank, we notify the drawee that we have it for collection. We either send our collector or mail notice of same. In this instance we would notify Elm City Lumber Company we hold draft on them for Childerhose Pratt, and the Bank of Ottawa would not appear on the notice. The stamp across the corner of the draft means we are not to surrender the bill of lading attached to the draft, only upon payment of the draft, and if necessary hold the item for arrival of the goods. We would have no authority to turn the goods over until the payment of the draft. It is this direction in stamp across corner of draft, not in the regular printed form."
Defendant offered the following evidence:
J. G. Burgess, witness in behalf of Bank of Ottawa, interpleader, who testified as follows: "I reside at Ottawa. I am manager of the Chaudier Branch of the Bank of Ottawa; that is equivalent to cashier in your *Page 71 
country. I have been manager over three years, and in the banking business sixteen years. I am acquainted with Childerhose Pratt. In regard to this hay, Mr. Pratt brought the drafts to me in the bank and the bills of lading also. On 29 April, 1912, Mr. Pratt brought into the office of the Bank of Ottawa these two drafts with bills of lading attached, drawn at sight on the Elm City Lumber Company, one for (36) $211.03 and one for $161.30, and asked that they be discounted and placed to their credit, Childerhose Pratt, which I did, less our commission, and they withdrew the money the same day the drafts were brought in. I have the original entry sheet on which the entry was made. I attended to this and checked it over, and it was under my inspection, and I checked it over and put my initials on the sheet. On the original record I find $161.30 and $211.03; that is the discount sheet and that the ledger sheet [witness indicates different sheets]; the original entry is in the discount sheet, and that is checked by me as correct, also the other one. After the money was placed to the credit of Childerhose Pratt, and the money withdrawn by them, we forwarded the drafts to the Girard National Bank, who are our agents for the Southeastern and Southern States practically, for collection. This collection was to be made for us. Childerhose Pratt did not have any interest in the collection. They had received the money and had no further interest. The collections were ours, and we sent the drafts to the Girard National Bank and they sent them to the Peoples Bank and were to return the money to us. I did not know, of course, to whom the Girard National Bank would send them; the proceeds were to be paid to us. Since then Childerhose 
Pratt have dissolved. Childerhose Pratt were paid by the bank $371.33; the full amount was $372.60, the difference between the two represented the discount. We have not received any money upon the drafts, because Elm City Lumber Company attached the funds."
Cross-examination: "We charge interest at 7 per cent in Canada. Interest on $372.60 for fifteen days would be $2.50. We did not take their paper at a loss. You claim collection took fifteen days. It should not have taken that long. I left Ottawa Saturday at 4:30 p.m., arrived in New Bern at 9:30 a.m. Tuesday following. This draft was not paid until thirty days after it was presented to us into the Peoples Bank. The draft is stamped 26 May, and discounted 29 April. The interest on that amount of money for thirty days would have been three times the amount charged for collection. It should not have been that long. I do not know how long it would take to come from Ottawa — the freight transportation. I left Ottawa Saturday at 4:30 and was here Tuesday at 9:30. As far as I know, Childerhose Pratt are solvent. They did not carry a pretty good account with us; the ledger accounts show a balance of from $600 down to $10; I do not consider that big. We had several drafts from *Page 72 
Childerhose Pratt. We never charged back to them any draft on the Elm City Lumber Company. One of the drafts, I know, was returned. All these dealings occurred within four or five days. There is a draft for $235.55 made in the same manner as this. I don't know that (37) we charged this draft back after it was returned. These were discounted 29 April and the $235.55 was on 25 April. If the drafts had been returned to the Bank of Ottawa we would have returned them to Childerhose Pratt. This is our usual method; we might have got the bill of lading and charged them back to their account. I don't know — with their permission, we might have charged them back. We have never made any demand on Childerhose Pratt for payment of this money. They signed the draft for which this collection was made. Of course, I cannot recall any case when the person signing the draft was not liable when the draft was not paid, but I have had them. Childerhose Pratt had no money when I left Ottawa. Childerhose Pratt have both left Ottawa; been gone about a year; I don't know where they have gone. They dealt in real estate and commissions. They shipped varied amounts of hay each month; I don't know that they were doing a large business. I knew the two drafts were for hay. We had the bills of lading, which showed they were for hay. I did not know anything about any contract between them and the Elm City Lumber Company. We did not look up the Elm City Lumber Company in a commercial agency."
Redirect: "The reason you didn't investigate the commercial rating of the Elm City Lumber Company was because when they drew the drafts they attached the bills of lading for the hay?"
Plaintiff objected. Objection overruled, and plaintiff excepted.
At this stage of the case the court excluded from the consideration of the jury all evidence relating to the draft charged back, and the court instructed the jury not to consider that evidence. Plaintiff excepted. The loose-leaf sheets from the book of the Bank of Ottawa showing account of Childerhose Pratt with the bank, including the draft charged, were afterwards introduced in evidence without objection.
His Honor, among other things, charged the jury as follows:
"The Bank of Ottawa undertakes to sustain its contention that it is the owner upon the ground that it is a banking institution in Canada, and that in the ordinary course of business, Childerhose Pratt, conducting business in their city, came to the bank with the two drafts, which have been described in the answer drawn in favor of the Bank of Ottawa, and sold those drafts to the Bank of Ottawa, or procured the Bank of Ottawa to discount them, and at the same time indorsed the bills of lading to the bank as security for the amount. They allege that they paid for the drafts and the two bills of lading, and that the bank, at the time *Page 73 
that was done, advanced $371.33, about $1.40 less than the face of the drafts, and that it placed this money to the credit of Childerhose Pratt upon the books of the bank; that the defendants Childerhose Pratt, being customers of the bank, drew the money out of the bank that same day by checks, or within a day or two; that the bank sent the (38) drafts with the bills of lading to their correspondent bank, the Girard National Bank of Philadelphia, and that that bank, in the ordinary course of business, sent to its correspondent in New Bern for collection against the Elm City Lumber Company; that the drafts were presented and collected, paid by the plaintiff, and that the plaintiff took the bills of lading and got the hay. Now, the Bank of Ottawa contends that by reason of those facts, which it says are the facts which I have just recited, and which it says has been established, that it became the owner of the bills of lading and therefore the owner of the hay as security for the amount that it had advanced upon the drafts, and that when those drafts were collected the Bank of Ottawa was the owner of the proceeds of the drafts of $372.60 now, or at least then, in the Peoples Bank of New Bern, afterwards attached in this action."
Plaintiff excepts to this part of his Honor's charge.
2. "Now, if this evidence satisfies you by its greater weight that the Bank of Ottawa discounted the drafts mentioned in the ordinary course of business and became the holder thereof in due course and at the same time took an assignment of the bills of lading mentioned in the interplea for security for the amount advanced to Childerhose Pratt upon those drafts, then you should answer this issue `Yes.'" Plaintiff excepted.
3. "The holder in due course is the holder who has taken an instrument under the following conditions: That the instrument is complete and regular on its face. There is no contention here that it is not. Second, before it was overdue and without notice that it had been previously dishonored. There is no evidence here that they were overdue or had been previously dishonored. Third, that they were taken in good faith and for value; and, fourth, that at the time they were negotiated to the bank it had no notice of any infirmity in the instrument or any defect in the title of the person who negotiated them. To constitute notice of infirmity in an instrument or defect in the title of the person negotiating same, the person to whom it is negotiated must have actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounts to bad faith." Plaintiff excepted.
4. "Under these definitions, your first inquiry would be, Were these papers transferred in the ordinary course of business to the Bank of Ottawa, and did the bank take them in good faith for value? The only testimony on that point is that of Mr. Burgess, the cashier of the bank. He tells you the circumstances under which he took the papers; he testified *Page 74 
that he had no knowledge of any contract between Childerhose 
Pratt and the Elm City Lumber Company; that they were shipping (39) these two car-loads of hay and that they were drawing for the money; that the bills of lading covering the shipment of hay were indorsed and transferred to his bank; that he charged them the usual bank discount for the drafts and took an assignment of the bills of lading as security for the money advanced by the bank; and that the money was placed to the credit of Childerhose Pratt on the books of the bank, and that almost immediately that money was drawn out of the bank." Plaintiff excepted.
5. "If this evidence satisfies you by its greater weight that the paper was discounted at the bank in the ordinary course of business, and that the proceeds of the drafts, after deducting the commission or discount, were placed to the credit of Childerhose Pratt; that the bank at the same time took an assignment of the bills of lading and Childerhose Pratt drew this money out of the bank in a day or two and got the benefit of it, then in that event it would constitute the Bank of Ottawa the holder for value." Plaintiff excepted.
6. "The next question is whether the bank took the drafts with notice of any infirmity. (I don't understand that there is any question as to defect in title or any evidence offered on that point.) The defendant Bank of Ottawa contends that it had no notice, and offers in support of that contention the testimony of the cashier, who says that the bank took the papers in good faith for value and without any notice that there was any contract between plaintiff and Childerhose Pratt, and the only infirmity that could have been was that the hay was defective or that in shipping the hay there was a breach of warranty, in that it should be No. 2 timothy hay; and he says, further, that Childerhose Pratt never told him anything about the contract; that he never knew anything about it. So if you find the facts to be as testified to by the witness for the Bank of Ottawa, that it took this paper under the circumstances claimed to have existed, then you will find that the bank took it for value; that it took it without notice of any infirmity or defect, if you are so satisfied by the greater weight of the evidence." The plaintiff excepted.
7. "The holder bank has a prior interest, who takes an assignment of the bills of lading as security for the amount advanced on the drafts and becomes owner of the goods to an extent sufficient to secure the two drafts, if he gets them under the circumstances I have outlined, that is, in good faith for value, without any notice of infirmity or defect, and having gotten the bills of lading in that way, it holds the property covered by them, and it has the right to enforce its claim as against an attaching creditor, as in this case of plaintiff." The plaintiff excepted. *Page 75 
There was a verdict in favor of the bank, interpleader, and from the judgment rendered thereon the plaintiff appealed.
The first and third exceptions, to the refusal to permit a witness to answer certain questions, cannot be considered, because there is nothing in the record to show what evidence would have been elicited (Stout v.Turnpike Co., 157 N.C. 366), and the fifth, sixth, and seventh exceptions are abandoned, because not discussed in the brief. Rogers v. Mfg. Co.,157 N.C. 484.
The question intended to be presented by the second exception does not clearly appear, as no evidence had been introduced at the time the exception was taken that any draft had been charged back; but if, as indicated in the brief of the appellant, the draft referred to was not one of those the proceeds of which are in litigation, and the evidence was offered to prove the custom of the Bank of Ottawa, it was incompetent for that purpose, as one item among many others differing from it cannot establish a custom.
It also appears that the plaintiff afterwards had the benefit of the evidence, as sheets from the books of the bank were introduced showing the item.
The evidence offered to prove the custom among the banks of New Bern to charge back drafts returned unpaid could not affect the rights of the Bank of Ottawa, and the witness stated that he knew nothing of the custom in Ottawa.
The other exceptions are to parts of the charge to the jury, which we have set out, and in which we find no error.
The definition of a holder in due course is taken almost literally from section 2201 of the Revisal, and the statement of the rights of a purchaser of a draft with bill of lading attached is in accord with the principles declared in Mason v. Cotton Co., 148 N.C. 498, and in other decisions.
His Honor did not charge the jury that the bank was a holder in due course if it took the drafts for collection, and, on the contrary, told the jury: "The plaintiff, on the other hand, contends that under this evidence you ought to find that the bank merely took the drafts and bills of lading as a collecting agent, and that it never acquired any property by way of security for anything advanced, if anything was advanced, and, taking them that way, it had no property right in them, and, having no property right in them, it had no interest in the hay or the proceeds from the hay; and the plaintiff calls your attention to the testimony of Mr. Burgess, that the charge upon this transaction was but $1.40, and contends from *Page 76 
that you ought to find that amount was paid, not as a discount on the purchase of the paper, but was merely a collecting fee or (41) commission for collecting, and nothing more. If you are satisfied from the evidence that the bank merely took the paper for collection and charged a commission for collecting, then that would not be a purchase and the bank would not be the holder in the ordinary course of business, because in order to become holder it must have paid, as it contends, the difference between this charge and the face value of the drafts and credited the amount to Childerhose Pratt, who must have drawn the money out of the bank. If they took up the paper for collection and charged a commission for collection and placed the proceeds to the credit of Childerhose Pratt, and you are satisfied, from all the evidence, that it was the custom of the bank that when drafts were not paid, which had been so obtained, to charge them back to the drawer, that would be evidence for you to consider upon the question of whether or not this was a mere transfer for collection or a transfer in order to secure the bank for money advanced."
We have carefully considered the exceptions taken, and find
No error.
Cited: Timber Co. v. Lumber Co., 168 N.C. 457 (1c); Warren v. Susman,168 N.C. 464 (1c); Deposit Co. v. Trust Co., 187 N.C. 613 (3c); Newbernv. Hinton, 190 N.C. 111 (1c); In re Will of Redding, 216 N.C. 499 (1c).